IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| James E. Kimble, | Case No. 3:08 CV 2186 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Mark Wasylyshyn, et al., | |
| Defendants. | |

### INTRODUCTION

Plaintiff James Kimble brings claims under Title VII, 42 U.S.C. § 1981, and Ohio Revised Code § 4112, alleging Defendants discriminated against him on the basis of race by denying him a promotion to the Environmental Sergeant position in the Wood County Sheriff's Office (Sheriff's Office). Plaintiff names as Defendants Sheriff Mark Wasylyshyn, the Board of Wood County Commissioners, and individual Commissioners Jim Carter, Tim Brown, and Alvin Perkins. Defendants filed a Motion for Summary Judgment (Doc. No. 41). Plaintiff filed an Opposition (Doc. No. 42), and Defendants filed a Reply (Doc. No. 43). This Court held a hearing on November 2, 2009 (Doc. No. 47).

### BACKGROUND FACTS

In August 2006, the Sheriff's Office posted a job opening for an Enforcement Officer in the Environmental Division (the "Environmental Sergeant" position). The Environmental Sergeant's duties included enforcing solid waste laws, inspecting junkyards, and supervising the deputy in charge

of the inmate litter control crew. The Environmental Division is a section of the larger Road Patrol Division of the Sheriff's Office. The Sheriff's Office has approximately 122 employees, two of whom are African American. African Americans make up one to two percent of the population of Wood County as a whole (Wasylyshyn Dep., p. 32).

Sheriff Wasylyshyn took office in January 2005 and instituted significant changes in hiring procedures. Wasylyshyn's predecessor had generally made employment decisions without any formal interview process (Wasylyshyn Dep., pp. 22-23). Wasylyshyn began using five-person panels to conduct interviews, review candidate qualifications, and recommend candidates for employment or promotion. Wasylyshyn made final employment and promotion decisions. In another change, Wasylyshyn encouraged more active law enforcement by all deputies, including issuing citations and making arrests (Wasylyshyn Dep., p. 42). By contrast, his predecessor promoted a warning-oriented law enforcement philosophy and directed deputies to issue citations only when necessary (Kohl Dep., pp. 30-35).

<u>The Envrionmental Sergeant Posting</u>

At first, the Environmental Sergeant opening was limited to existing sergeants within the Sheriff's Office, of whom none was African American. During the initial posting, Wasylyshyn personally encouraged Sergeant James Shank (a Caucasian) to apply for the position. Shank said he would consider applying but ultimately declined (Shank Dep., p. 12). No sergeants applied by the September 8, 2006 deadline, and on September 11 the position was re-posted for all road patrol deputies. After listing the duties of the position, the posting stated (Doc. No. 25-1, Ex. 3, internal punctuation altered):

2

> Requirements for this position are:
>
> Minimum of five years Sheriff's Office road patrol experience; valid CDL [commercial driver's license] or obtain one within six months of position being awarded; flexible days and hours; record keeping and statistic development abilities; computer experience; public speaking ability; no recent disciplinary issues.

By the new deadline of September 18, two road deputies had submitted letters of interest: Plaintiff, an African American male, and Rodney Konrad, a Caucasian male. Human Resources Manager Joneal Bender spoke with three other deputies (all Caucasians) about the new position, and even helped type a letter of interest for one, but all three declined to apply. These conversations with Bender were initiated by the deputies to discuss other matters (Robinson Dep., p. 7; Wachter-Parker Dep., p. 9; Otley Dep., pp. 16-18), and Bender took the opportunity to encourage their consideration of the opening.

### The Two Candidates

By September 2006, Plaintiff had been with the Sheriff's Office for seventeen years. He started his service in 1989 as a Corrections Officer in the Wood County Justice Center. In 1996-97, Plaintiff worked two stints as a deputy in the Environmental Division in charge of the inmate litter crew (Kimble Dep., pp. 75-76). Each period lasted six to eight months. Plaintiff was then placed on road patrol. Sergeant Bill Erwin was one of Plaintiff's supervisors on road patrol. Erwin recalls that Plaintiff's job performance was generally satisfactory. However, Erwin also recalls conversations with the former sheriff and chief deputy regarding Plaintiff's low number of citations, and Erwin spoke to Plaintiff about increasing his citations (Erwin Dep., pp. 51-54). Another of Plaintiff's supervisors, Sergeant Shank, likewise spoke to Plaintiff about his low citation statistics and rated Plaintiff's overall performance as average -- "C to C+" (Shank Dep., pp. 22, 25).

Konrad was appointed to road patrol in August 2001 but did not actually begin road patrol duties until mid-November 2001 (Konrad Dep., p. 11-12). Thus, in September 2006 when he applied for Environmental Sergeant, he had approximately four years and ten months of road patrol experience. When he began work as the Environmental Sergeant in December 2006, he had more than five years experience. Before applying, Konrad spoke to Chief Deputy Eric Reynolds about whether he met the five-year requirement. Reynolds told him that he should apply (Konrad Dep., p. 40). Sergeant Shank, who supervised Konrad as well, never had to speak with Konrad about his citation numbers, and described him as a proactive deputy, rating him excellent -- "A to A+" (Shank Dep., pp. 24-25). At the time Konrad submitted his letter of interest, he did not have a CDL, though he obtained one shortly after beginning the Environmental Sergeant position.

### The Interviews and Selection

The interview panel for the Environmental Sergeant position consisted of Ken Rieman, the Solid Waste Management District Director; Bill Erwin, the Lieutenant for special assignment deputies; Joneal Bender, Director of Human Resources; Chief Deputy Eric Reynolds; and Andrew Kalmar, Wood County Administrator (all Caucasians). The interviews were conducted on November 1, 2006. Each panel member received a packet containing letters of interest, a list of questions to ask, and a score sheet for each candidate. The packets also contained a summary of both candidates' Law Enforcement Activity Statistics (Statistics), including numbers of citations and arrests from January 1, 2006 through October 15, 2006.

Each panel member interviewed and scored the candidates. The panel then determined that Plaintiff's and Konrad's scores were very close. Konrad scored higher than Plaintiff with three interviewers; Plaintiff scored higher with two interviewers. At Reynolds' behest, the panel also

considered the Statistics. Konrad's enforcement numbers were substantially higher than Plaintiff's: 168 citations versus 11; 22 arrests versus 4. Kalmar suggested that the panel make two recommendations. The panel voted 3 to 2 to recommend Plaintiff if Wasylyshyn "liked the program just the way it was," and 4 to 1 to recommend Konrad if Wasylyshyn "wanted to take a more strict law enforcement approach" (Kalmar Dep., pp. 26, 51-52). Wasylyshyn selected Konrad.

Prior to the interviews, the Statistics had been prepared and distributed at the request of Wasylyshyn. Wasylyshyn acknowledges he had "a pretty good idea what those statistics would show" (Wasylyshyn Dep., pp. 80-81). His impression of the candidate's comparative activity levels was based on conversations he had with their immediate supervisors before the posting for Environmental Sergeant. Plaintiff's sergeants had told Wasylyshyn that "they had difficulty getting the fire under him to get him to be motivated to go out and do things" (Wasylyshyn Dep., p. 30), while Konrad's sergeants told him that Konrad "is always there to back people up, he's always high activity, he's looking for things to do, he is a self-motivator and keeps himself busy" (Wasylyshyn Dep., p. 31).

In April 2007, Plaintiff filed a complaint with the Ohio Civil Rights Commission, which determined it was probable that Defendants had engaged in discriminatory practice in violation of state law (Doc. No. 42-1). This lawsuit followed.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Plaintiff alleges violations of Title VII, 42 U.S.C. § 1981, and Ohio Revised Code § 4112, et seq. Claims brought under Section 1981 and Revised Code § 4112 are subject to the same analysis as discrimination claims under Title VII. *Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir. 1999); *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609 (1991). A plaintiff can establish discrimination under Title VII "either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Here, Plaintiff does not offer any direct evidence of discrimination but argues discrimination can reasonably be inferred from the circumstances.

Evaluation of discrimination claims based on circumstantial evidence follows the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff must first establish a prima facie case of discrimination. *DiCarlo*, 358 F.3d at 414. The defendant then has the burden of articulating "some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (internal quotations omitted). If the defendant meets this burden, the plaintiff has an opportunity to prove by a preponderance of the evidence that the defendant's articulated reason was a pretext for discrimination. *Id.*

6

**Prima Facie Case**

To establish a prima facie case of race discrimination in a promotion decision, Plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the promotion; (3) he was considered for and denied the promotion; and (4) a similarly-situated individual outside his protected class was promoted. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584-85 (6th Cir. 2009). Plaintiff has satisfied each element. First, as an African American, Plaintiff is a member of a protected class. Second, Plaintiff was qualified for the promotion, as evidenced by his satisfaction of the criteria listed in the job posting, as well as the interview panel's recommendation to promote Plaintiff if the Environmental Sergeant's duties were to remain the same. Third, Plaintiff was considered for and denied the promotion. Fourth, as a Caucasian road patrol deputy, Konrad was a similarly-situated individual outside the protected class. Thus, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for denying Plaintiff the promotion.

**Reason for Promotion Decision**

A defendant's burden to articulate a legitimate reason for a promotion decision "is merely a burden of production, not of persuasion," which can be satisfied if the defendant "simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Upshaw*, 576 F.3d at 585-86 (internal citations and quotations omitted). Wasylyshyn asserts that he based his promotion decision on Konrad's superior record of enforcement activity, which meshed with Wasylyshyn's stated goal of increased enforcement activity throughout the department, including the Environmental Sergeant position.

There is no dispute of Konrad's higher enforcement Statistics. Wasylyshyn has therefore met his burden of articulating a valid reason for his promotion decision. *See, e.g.*, *Bacon v. Honda of Am.*

7

*Mfg., Inc.*, 192 F. App'x 337, 347 (6th Cir. 2006) (recognizing that promotion based on a candidate's superior job performance is a legitimate nondiscriminatory justification). Plaintiff's argument that Defendants' asserted reason is not legitimate is more properly viewed under the discussion of pretext.

**Pretext**

Plaintiff can prove Defendants' proffered justification was a pretext for discrimination by showing Defendants' reason (1) had no basis in fact; (2) did not actually motivate the decision to promote; or (3) was insufficient to warrant the decision to promote. *Id.* at 1084. Plaintiff "must do more than simply impugn the legitimacy of the asserted justification[.]" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999). Rather, Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id.* (internal quotations omitted).

Plaintiff contends the record contains several facts from which a jury could infer discrimination. First, Plaintiff argues Konrad did not meet the posted qualifications for the Environmental Sergeant position (and Plaintiff did). Second, Plaintiff notes the Statistics were not a criterion listed on the job posting and claims they were introduced at the last minute in an effort to promote Konrad. Third, Plaintiff claims Defendants were inconsistent in their use of Statistics in promotion decisions. Finally, Plaintiff argues Defendants tried to tilt the applicant pool toward Caucasians by initially posting the job for existing sergeants (who were all Caucasian) and by actively recruiting Caucasian candidates for the position after Plaintiff submitted his letter of interest.

Plaintiff's contentions amount to nothing more than an attempt to "impugn the legitimacy" of Defendants' reason for promoting Konrad. *See id.* Plaintiff's first argument -- that Konrad did not meet the posted job requirements -- is refuted by the record. And, even though the Statistics were not

8

part of the posted criteria, they were nevertheless a valid way to distinguish between two otherwise similarly qualified candidates. The other actions highlighted by Plaintiff as potential evidence of discriminatory motive were all legitimate, race-neutral actions that do not give rise to an inference of discrimination. Each of Plaintiff's arguments is addressed in detail below.

<u>Konrad's Qualifications</u>

Plaintiff argues that Konrad only had four years and ten months of road patrol experience at the time he applied, so he did not meet the listed five-year requirement.

This Court finds that Defendants did not bend the rules or disregard their own published criteria in selecting Konrad. The relevant date is *not* the date of application. The job posting specifically recites the requirements for the position and asks that "[a]ny Road Patrol Deputies meeting above requirements who are interested in applying for this position should submit a letter of interest . . ." Not unlike a college student on the verge of graduating, who anticipates receiving a degree before beginning a new job, Konrad had the requisite years of experience when he actually assumed the Environmental Sergeant position. Plaintiff's argument on this point is frivolous.

If Konrad was objectively qualified for Environmental Sergeant (which this Court concludes he was), then Defendants are afforded extensive latitude in choosing between the two qualified candidates. The Sixth Circuit has held that "employers are generally 'free to choose among qualified candidates.'" *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). Thus, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proferred . . . rationale was pretextual." *Id.* at 627. Put another way, "in the case in which there is little or no other probative evidence of discrimination, to

9

survive a summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.*

Here, Plaintiff offers no evidence that his qualifications were significantly better. While Plaintiff did have two brief stints as the deputy in charge of the inmate litter patrol crew ten years before he applied for the Environmental Sergeant position, prior experience in the Environmental Division was not a listed job requirement, and supervising the litter control crew is not necessarily indicative of experience in enforcing environmental laws -- at least not enough to make Plaintiff's qualifications "significantly better" than Konrad's. Moreover, the interview scores of the two applicants were very close. Thus, in terms of the posted job criteria and interview scores, Plaintiff and Konrad were equally qualified for the position. Their similar qualifications are evident in the interview panel's decision to recommend them *both* to Wasylyshyn.

<u>Law Enforcement Activity Statistics</u>

Because Plaintiff and Konrad were equally qualified, Plaintiff's showing of pretext must depend on some other evidence of discrimination. *See Bender*, 455 F.3d at 626-27 ("In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."). For other evidence of discrimination, Plaintiff first points to Defendants' consideration of the Statistics which were not listed in the job posting. However, contrary to Plaintiff's argument, consideration of the Statistics bolsters rather than undermines Defendants' explanation of its decision. The Statistics clearly show that Konrad had a superior record of enforcement activity. In the ten months leading up

10

to the interviews, Konrad issued 168 citations and made 22 arrests; Plaintiff issued 11 citations and made 4 arrests with similar patrol duties.

Plaintiff does not claim the Statistics are irrelevant to the position or that it was irrational for Defendants to consider them. Rather, Plaintiff argues that consideration of the Statistics, after failing to include them in the job posting, could give rise to an inference of discrimination because the Caucasian candidate was certain to win based on the Statistics. This Court disagrees. As noted above, selecting one candidate from two equally qualified candidates cannot, without more, lead to an inference of discrimination. *See Bender*, 455 F.3d at 626-27. If one candidate is objectively superior to the other based upon relevant criteria, certainly this cannot lead to an inference of discrimination. In other words, an employer does not need an objective reason to pick one qualified candidate over another, *id.*, and if the employer *does* have a valid way to distinguish the candidates, so much the better.

Plaintiff also argues that Defendants have not consistently applied the Statistics when making promotion decisions. Plaintiff points to the 2005 promotion of Timothy Spees to Road Patrol Shift Sergeant, when Defendants did not use the Statistics as a selection criterion. Spees had lower numbers than some other applicants. Defendants offer two simple and compelling counter-arguments. First, a Shift Sergeant does not involve direct enforcement activities; it is a supervisory position requiring administrative and leadership skills. Second, Spees was clearly the top candidate for the job according to the interview panel and based on other criteria such as training and disciplinary record (Shank Dep., p. 18; Wasylyshyn Dep., p. 47-49). Thus, unlike the Environmental Sergeant position where there were two equally qualified candidates, Spees' promotion did not require consideration of any "tie-breaking" criterion such as enforcement statistics.

11

<ins>Tilting the Applicant Pool Toward Caucasians</ins>

Finally, Plaintiff argues that Defendants' hiring procedures tilted the applicant pool toward Caucasians. As evidence, Plaintiff points to Defendants' initial posting of the Environmental Sergeant position for existing sergeants, all of whom were Caucasian, as well as Human Resource Director Joneal Bender's encouragement of applications from Caucasian deputies. This Court finds these arguments meritless. Limiting the applicants to sergeants ensures that the applicants will already have supervisory experience, and it allows lateral moves for sergeants who desire different duties. Wasylyshyn adopted this procedure from his former job with a different police department, and he has used it consistently in promotions since taking office (Wasylyshyn Dep., 52-54). Plaintiff has offered no evidence rebutting this legitimate, race-neutral explanation.

In addition, in the circumstances of this case, Bender's encouragement of applications from three other deputies does not give rise to an inference of discrimination. Bender did not actively recruit Caucasian candidates. Rather, her conversations with the three deputies were all initiated by the deputies for different purposes. Nor does offering to type a letter of interest for a deputy give rise to an inference of discrimination; that is simply the action of a helpful Human Resources Manager.

If the demographic makeup of Sheriff's Office employees were different, Plaintiff might be able to argue that there was a concerted effort to skew the applicant pool toward Caucasian candidates. The Sixth Circuit has held that "[a]ppropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against members of the class." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). However, "the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Id.* Thus, if there were a significant

12

number of African American employees in the Sheriff's Office, the lack of African Americans in the sergeant rank and the encouragement of applications from Caucasian candidates might be plausible evidence of discrimination. However, the Sheriff's Office has only two African American employees out of 122 total, which is reflective of the population of Wood County as a whole. Given these demographics, Plaintiff's arguments about tilting the applicant pool toward Caucasians carry little weight.

## CONCLUSION

Plaintiff offers no evidence that could lead to an inference of discrimination in Defendants' promotion of Deputy Konrad. Based on published criteria and interview scores, the interview panel was confronted with two well-qualified candidates. An additional, clearly relevant criterion (Statistics) favored Konrad. Plaintiff has not met his burden of showing that Defendants' valid explanation of their decision was a pretext for discrimination.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 41) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 23, 2009